IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TERRY L. MOFFETT,
Petitioner,

v. Case No. 3:05cv279/MCR/MD

JAMES R. MCDONOUGH,[1]
Respondent.

---

ORDER and
REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1). Respondent has filed a response (doc. 9) to which petitioner has replied (doc. 15). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND and PROCEDURAL HISTORY

Petitioner was charged with possession of cocaine in the Circuit Court of Escambia County, Florida. After consultation with counsel, he entered into a plea

---

[1] James R. McDonough succeeded James V. Crosby as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent. Fed. R. Civ. P. 25(d)(1).

**agreement by which he would plead nolo contendere in exchange for a recommended sentence of fifty-two months imprisonment (ex. A, p. 47).[2] The court accepted the agreement and sentenced petitioner to fifty-two months. (Ex. A, pp. 28-33). Petitioner did not appeal. Petitioner later filed a timely motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 in which he claimed ineffective assistance of counsel because his attorney (1) failed to investigate, (2) failed to file a motion to dismiss, (3) failed to advise him of affirmative defenses, (4) failed to show petitioner the police report, and (5) failed to discuss with petitioner the concept of constructive possession. The trial court denied the motion in a written order without a hearing (ex. A, pp. 18-26). Petitioner's appeal of the order denying relief was unsuccessful.**

**He now seeks federal habeas relief claiming that his counsel was constitutionally ineffective and that his plea was involuntary. Respondent concedes that this petition is timely.**

## SECTION 2254 REVIEW

**Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:**

> **(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–**
>
> **(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established**

---

**[2] Hereafter all references to exhibits will be to doc. 9 unless otherwise noted.**

> **Federal law, as determined by the Supreme Court of the United States; or**
> **(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

**28 U.S.C.A. § 2254 (2002).**

**The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:**

> **In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

**120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).**

**Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.**

**If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from**

**Supreme Court case law to a new context."** ***Putman v. Head*****, 268 F.3d 1223, 1241 (11th Cir. 2001);** ***see also Carr v. Schofield*****, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting** ***Ramdass v. Angelone*****, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).**

**Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued.** ***E.g., Mitchell v. Esparza*****, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . .");** ***Lockyer, supra*****, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.");** ***Early v. Packer*****, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . .");** ***Williams, supra*****, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").**

**Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims.** ***Neelley*****, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).**

**Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified**

**that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).**

**When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).**

**PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF**

**1. Plea Involuntary Due to Ineffective Assistance of Counsel.**

**For his first ground for relief petitioner contends that his attorney was constitutionally ineffective, both before the plea colloquy at rearraignment and during it. Petitioner's claim is grounded on four factors: (1) the Assistant Public Defender Mr. Loveless, who represented petitioner during rearraignment, was his third attorney assigned by the Public Defender's Office, and he had never spoken to Mr. Loveless before appearing in court for rearraignment; (2) petitioner was "slow of speech," and unable to confer with Mr. Loveless about the crime or the plea; (3) Mr. Loveless did not object to any of the questions put to him by the court during rearraignment; and (4) Mr. Loveless was ill informed as to petitioner's defenses to the charge and of petitioner's physical and mental problems.[3] Based on these shortcomings, Mr. Loveless allowed petitioner to plead nolo contendere to a crime of which he was not guilty.**

**[3]Petitioner says he has had a stroke, a tracheotomy and a leg amputation, and has diabetes. He further indicates that he was receiving therapy for an "inability to concentrate and remember," (doc. 1).**

**A. Clearly Established Federal Law**

**When a prisoner contends that ineffective assistance of counsel led him to enter an improvident guilty plea, courts apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)). Under *Strickland*, in order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.**

**"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Eleventh Circuit has emphasized:**

> **We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc). Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.**

***Chandler* at 1314 (footnote omitted). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions,**

**it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. *Chandler* at 1314 n.15.**

**In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.**

**Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).**

**B. Federal Review of State Court Decision**

**The state court identified *Strickland* as the controlling legal standard, and denied relief based on the plain record (ex. A, pp. 19-26). For the reasons that follow, the undersigned concludes that this decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.**

**Fundamental to petitioner's claim is that he was factually innocent of possessing cocaine - that "someone" had come alongside the car in which he was a passenger and dropped a quantity of cocaine, and when the police found it on the ground outside the car, they had no proof that petitioner possessed it. At the plea hearing, the state outlined the factual basis for the crime. The following then transpired:**

**THE COURT: Mr. Moffett, what were you doing with the cocaine?**

**THE DEFENDANT: It wasn't my cocaine.**

**THE COURT: Whose was it?**

**THE DEFENDANT: It was some guy come to the truck (unintelligible) right down that (unintelligible) my side of the truck.**

**THE COURT: Had he dropped it?**

**THE DEFENDANT: Yes, sir, he dropped it.**

**THE COURT: Were you going to buy it from him?**

**THE DEFENDANT: No, my brother was going to buy it.**

**THE COURT: All right. So you were not involved in possessing it?**

**THE DEFENDANT: No sir, I was real sick that night and going to the hospital.**

**THE COURT: Okay. You were not going to handle any money for your brother to help him buy it?**

**THE DEFENDANT: No.**

**THE COURT: Do you understand that you may have a complete defense in this case?**

**THE DEFENDANT: Yeah.**

**THE COURT: Do you understand you're giving up that defense for all time?**

**THE DEFENDANT: Yeah.**

**THE COURT: Do you think that's best?**

**THE DEFENDANT: Yeah. I just want to get this over with.**

**(Ex. A, pp. 41-42). It is thus clear that petitioner knew, as he claims, that he was innocent of the charge, and had no hesitancy in so stating. It is equally clear that he knew he was waiving the defense of innocence in order to "get it over with." As this court is well familiar, "[s]olemn declarations in open court carry a strong presumption of verity."** ***Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621,**

**1629, 52 L.Ed.2d 136 (1977). Upon federal review, the standard for determining the validity of a plea is "whether the plea represents a voluntary intelligent choice among the alterative courses open to the defendant."** ***North Carolina v. Alford*****, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970);** ***Boykin v. Alabama*****, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In the context of a guilty or no contest plea, due process is satisfied if a defendant understands the charges against him, understands the consequence of the plea, and voluntarily chooses to plead guilty or no contest without being coerced to do so.** ***Stano v. Dugger*****, 921 F.2d 1125, 1141 (11th Cir. 1991). In determining whether these safeguards have been met, a judge must necessarily rely on a defendant's statements when entering the plea in ultimately determining whether the plea was voluntary. "[R]epresentations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the pleas, constitute a formidable barrier in any subsequent collateral proceedings."** ***Blackledge v. Allison*****, 431 U.S. at 73-74, 97 S.Ct. 1621. In determining the voluntariness of a plea, a reviewing court must examine the totality of circumstances.** ***Henderson v. Morgan*****, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).**

**The trial court found that counsel had spoken to petitioner's brother (the driver) and had discussed the facts with petitioner and gone over his defenses (ex. A, p. 21). The trial court itself went over the facts (quoted above) and satisfied itself that petitioner was aware that he had a defense and that he was waiving it. The court could reasonably rely on petitioner's sworn testimony at the plea proceeding, and did so. The court was therefore justified in holding that counsel's representation in this regard was not ineffective.**

**As to petitioner's assertions that he was slow of speech, unprepared "to make a well thought out decision," (doc. 1, first continuation page) and unable to have a reasoned discussion with defense counsel, the record refutes this claim as well. Petitioner told the court: (1) that he had had sufficient time to discuss the case with counsel (ex. A, p. 39), (2) that the only medication he was taking was for his high blood pressure, (3) that his medication did not interfere with his ability to understand**

what was happening, and (4) that he had never been committed to a mental health facility (ex. A, p. 40). Further, during the plea proceeding, counsel stated on the record in petitioner's presence that he had discussed the available defenses with petitioner and that petitioner understood that those would be waived by entering a plea (ex. A, p. 38). Petitioner did not object or make any indication that this was incorrect.

As to petitioner's assertions that counsel failed to object to the judge's questions at the plea colloquy, the court can discern no basis upon which counsel should have objected. Petitioner contends the judge's questions were "insufficient," that counsel should have requested that the judge question petitioner "further," and that had counsel done so the judge would have been aware of petitioner's "deficit," (*i.e.*, that he was receiving therapy for an alleged inability to concentrate and remember). However, petitioner failed to assert this particular ground in his Rule 3.850 motion, and it is now procedurally defaulted. *See Footman v. Singeltary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously."); *see e.g., Peoples v. Campbell*, 377 F.3d 1208, 1238-39 (11th Cir. 2004) (finding that two instances of ineffective assistance raised in petitioner's federal habeas petition had not been presented to the state courts and were thus procedurally defaulted).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct'

---

[4]Section 2254 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

**alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.**

**As the United States Supreme Court explained in *Picard*:**

> **If the exhaustion requirement is to prevent "unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution," it is not sufficient merely that the federal habeas applicant has been through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.**

***Picard*, 404 U.S. at 276 (citations omitted).**

**An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be**

---

. . . .
**(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.**

**enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger,* 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).**

**To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower,* 7 F.3d at 210; *Parker,* 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:**

> **a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.**

***Id.***

**In the instant case, petitioner blames his failure to raise these issues earlier on a former inmate clerk. Regardless, this instance of ineffective assistance (counsel's failure to suggest to the court that it inquire further as to whether petitioner's inability to concentrate and remember things rendered him unable to knowingly and intelligently enter a plea) was not raised, and the failure of an inmate clerk to raise them in not legally sufficient to constitute cause. Further, although**

**petitioner claims to be innocent, he has not provided the court with the type of "new reliable" evidence the Supreme Court discussed in *Schlup, supra*, so his claim of actual innocense is insufficient to excuse his default. Consequently, this additional basis for petitioner's ineffective assistance of counsel claim is procedurally defaulted.**

**If the court were to consider it, it should be found to be meritless. Petitioner asserts that had Mr. Bayhi (petitioner's previous public defender) left notes explaining, for example, that the judge was considering scheduling petitioner's hearing at the nursing home where petitioner lived due to his condition, Mr. Loveless would have had some idea as to petitioner's "condition" (doc. 1, continuation p. 1). However, this merely demonstrates that petitioner was not prejudiced by counsel's failure to make the court aware of petitioner's "condition" because the court was all ready aware of it. Furthermore, petitioner fails to allege specific facts to suggest that his physical condition or the issues he was addressing in mental health therapy either made him unable to understand the proceedings or were reasons why he did not actually understand the significance and consequences of what he was doing. Moreover, petitioner's allegations fail to establish that had counsel urged the court to ask more questions there is a reasonable probability it would have been determined that petitioner was incompetent or not knowingly and intelligently entering a plea.[5] Finally, the court's searching inquiry of petitioner at the plea**

---

**[5]The competency standard for pleading guilty or no contest is the same as the competency standard for standing trial. *Godinez v. Moran*, 509 U.S. 389, 399, 113 S.Ct. 2680, 2686, 125 L.Ed.2d 321 (1993). In *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the Supreme Court held that the standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Ibid.*, (internal quotation marks omitted). *Accord, Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial"). As the Court in *Godinez* further explained, however, a finding that the defendant is competent to stand trial is not all that is necessary before he may be permitted to plead guilty; the trial court must satisfy itself that the defendant's waiver of his constitutional rights (*i.e.*, the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers) is knowing and voluntary. *Id.,* 509 U.S. at 400-01, 113 S.Ct. at 2687. The focus of the competency inquiry is the defendant's mental capacity, *i.e.*, the question whether he has the <u>ability</u> to understand the proceedings, whereas the purpose of the "knowing and voluntary inquiry" is to determine whether defendant <u>does actually</u> understand the significance and**

**hearing belies any suggestion that petitioner was either incompetent or did not actually understand the nature of the charge and the consequences of his plea (ex. A, attachs. 1 & 2). In fact, during the plea colloquy petitioner had the wherewithal to clarify at least one finer detail of the plea agreement - the fines and costs provision (ex. A, p. 37).**

**Finally, the plea agreement itself, which petitioner told the court he had read, understood and signed, and about which he had no questions, set out in detail the rights petitioner was waiving, the nature of the charges, and the possible penalties (ex. A, p. 44). Again, the trial court was entitled to rely on petitioner's sworn testimony at the plea hearing. The state court's ruling in denying post-conviction relief did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.**

**2. Involuntary plea.**

**Petitioner also says that his plea was involuntary because it was not made with his understanding of the nature of the charge and the consequences of the plea. His stated reason is that he "made the plea out of frustration. His attorneys were not discussing his defenses or explaining what the outcome of the plea would entail." (Doc. 1, p. 4). He adds that his plea was also involuntary because his recent stroke "affected his frame of mind." (*Id.*).**

**Petitioner's assertion that his plea was involuntary due to counsel's failure to discuss any available defenses before advising him to enter a plea is essentially the same as his claim for ineffective assistance of counsel discussed above. As such, it needs no further discussion here. Respondent contends that the additional grounds (counsel's failure to explain the consequences of the plea and petitioner's state of mind) were not presented to the state court for resolution, and are procedurally defaulted. Respondent is correct.**

---

**consequences of the particular decision and whether that decision is uncoerced. *Id.*, 509 U.S. at 401 n.12.**

**When petitioner challenged his plea in his Rule 3.850 motion by asserting that he was denied effective assistance of counsel, he alleged counsel was deficient in the following respects: (1) counsel failed to file a motion to dismiss; (2) counsel failed to investigate and procure evidence; (3) counsel failed to advise petitioner of any available affirmative defenses before advising him to enter a plea; (4) counsel failed to show petitioner the police report; and (5) counsel failed to discuss with petitioner that the state would have to prove constructive possession. Petitioner did not, however, contend that counsel failed to discuss the consequences of the plea. Petitioner blames his failure to raise this issue earlier on a former inmate clerk. Regardless, it was not raised, and the failure of an inmate clerk to raise it is not legally sufficient to constitute cause. Although petitioner claims to be innocent, he has not provided the court with the type of "new reliable" evidence the Supreme Court discussed in *Schlup, supra*, so his claim of actual innocense is insufficient to excuse his default. Consequently, this additional basis for the claim of involuntary plea is procedurally defaulted.**

**Similarly, petitioner's contention that his plea was involuntary because his stroke "affected his frame of mind" is procedurally defaulted. Petitioner did not present this claim to the state court, and he is procedurally barred from returning to state court to do so now. Petitioner has made none of the requisite showings to excuse his default. Therefore, this court should not address the merits of the claim.**

**If the court were to consider these procedurally defaulted issues, they should be found to be meritless. The plea agreement and the plea colloquy show that the consequences of a plea were explained to petitioner, and he gave the court no indication otherwise. It was clear that if he pleaded he would not have a trial, he would waive all available defenses, he would be sentenced to fifty-two months, and he would be required to pay $436 in fines and costs. That is exactly what happened. Petitioner made no claim of any mental problems prior to or at rearraignment in spite of having been given the opportunity to do so. In fact, he expressly affirmed that he read all of the terms of the plea agreement before he signed it, that he had no questions about anything in the plea agreement, that he understood everything in it (after clarification of the fine), that he had had enough time to talk to his attorney**

**about his decision, that he was satisfied with the advice given, that he had not been made to plea when he didn't want to, that the medicines he was taking were not hurting his ability to know what he was doing, and that he understood he may have a complete defense and that he was giving up that defense for all time and thought that was best (ex. A, pp. 36-42). Furthermore, petitioner makes much of the fact that he had had a stroke, but he fails to allege specific facts to show that this impaired his ability to comprehend the discussions and proceedings surrounding his plea.**

**In summary, to the extent petitioner raised his involuntary plea claim in the state court (concerning counsel's failure discuss affirmative defenses prior to advising petitioner on the plea), the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. The additional bases for claiming involuntary plea are procedurally defaulted, and are without merit in any event. Petitioner is not entitled to federal habeas relief, and the writ should not issue.**

**Accordingly, it is ORDERED:**

**The clerk shall change the docket to reflect that James R. McDonough has been substituted as respondent in this cause.**

**And it is respectfully RECOMMENDED:**

**That the petition for habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Terry Laverne Moffett*, in the Circuit Court of Escambia County, Florida, case no. 02-4820, be DENIED and that the clerk be directed to close the file.**

**At Pensacola, Florida this 28th day of April, 2006.**

/s/ Miles Davis

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**